**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

WILLIAM HOWARD,

Plaintiff,

v.

CONTRA COSTA COUNTY; DAVID LIVINGSTON; SEAN FAWELL; TOWN OF DANVILLE; STEVEN SIMPKINS; and DOES 1-50,

Defendants.

Case No. 13-cv-03626 NC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 46

Before the Court is defendants' motion to dismiss some of the claims in plaintiff's first amended complaint. Because the amended complaint does not cure the deficiencies as to the due process and negligent hiring claims identified in the Court's prior order of dismissal, the motion is GRANTED as to those claims which are DISMISSED WITH PREJUDICE. The Court finds that the amended complaint states a claim for relief under 42 U.S.C. § 1983 against defendants Livingston and Fawell in their individual capacities, and, therefore, DENIES the motion to dismiss as to that claim.

## I. BACKGROUND

Plaintiff William Howard alleges that he was terminated by the Contra Costa County Sheriff's Office from his job as a reserve deputy sheriff in retaliation for having reported misconduct of a fellow deputy. Dkt. No. 37. The report resulted in the arrest of the deputy

who was criminally prosecuted for his involvement in setting up "Dirty DUI's." *Id.* Howard brings this lawsuit against Contra Costa County, the Town of Danville, and their employees, alleging violations of his rights to free speech and due process, retaliation in violation of California Labor Code § 1102.5(b), and a state law claim for negligent hiring, retention, supervision, and training. *Id.* The facts alleged in the complaint were summarized in the Court's order of February 28, 2014, Dkt. No. 35, and will not be repeated here. In the February 28 order, the Court denied defendants' motion to dismiss Howard's claims for retaliation in violation of the First Amendment and California Labor Code § 1102.5(b), and granted the motion to dismiss with leave to amend as to the remaining claims. Dkt. No. 35.

On March 26, 2014, Howard filed his first amended complaint. Dkt. No. 37. Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the following claims: (1) Howard's § 1983 claim for violation of due process as to all defendants (first claim for relief); (2) the § 1983 claim against defendants Livingston and Fawell (third claim for relief); (3) the claim for the negligent hiring, retention, supervision and training of Deputy Tanabe as to all defendants (fifth claim for relief); and (4) the claim for the negligent hiring, retention, supervision and training of the unnamed deputies who allegedly retaliated against Howard as to defendants Simpkins and Danville (fifth claim for relief).

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). On a motion to dismiss,

all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). However, a court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Additionally, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Where a court dismisses for failure to state a claim under Rule 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

### A. The First Amended Complaint Fails to State a Claim for Violation of Due Process (First Claim for Relief).

Howard's first claim for relief under 42 U.S.C. § 1983 alleges that County sheriff Livingston and assistant sheriff Fawell violated his right to due process when they "terminated Plaintiff and refused to provide him with a 'name-clearing' hearing." Dkt. No. 37 ¶ 51b. The Court previously dismissed this claim with leave to amend, finding that the complaint did not contain sufficient allegations to trigger the requirement to provide a name-clearing hearing. Dkt. No. 35.

The procedural protections of due process are triggered if (1) "the accuracy of the charge is contested"; (2) "there is some public disclosure of the charge"; and (3) "the charge is made in connection with termination of employment." *Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 891-92 (9th Cir. 1987) (citations omitted). "[A] terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). "The Supreme Court has stated that a hearing for a nontenured employee based on stigmatization is required '[o]nly if the employer creates and

disseminates a false and defamatory impression about the employee in connection with his termination.'" *Fleisher v. City of Signal Hill*, 829 F.2d 1491, 1495 (9th Cir. 1987) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977) (per curiam)); *see also Debose v. U.S. Dep't of Agric.*, 700 F.2d 1262, 1266 (9th Cir. 1983) ("A liberty interest in future employment is only abridged when an employee's termination creates a stigma foreclosing freedom to take advantage of other employment opportunities . . . . There can be no such stigma when there is no public disclosure of the reasons for discharge." (citations omitted)).

As the Court observed in its February 28 order, the initial complaint did not allege that defendants publicly disseminated a stigmatizing charge against Howard in connection with his termination. Dkt. No. 35. While Howard argued that he was stigmatized throughout the community by media reports and that his termination created the impression that he had engaged in improper conduct, the complaint merely alleged that "[i]n the media reports, [Howard] was identified as the person who reported Deputy Tanabe to the County regarding the Katz arrest." Dkt. No. 1 ¶ 28. The Court held that Howard had not alleged sufficient facts to trigger the procedural due process protections because he failed to allege that defendants publicized a stigmatizing charge. Dkt. No. 35.

In his first amended complaint, Howard alleges that "[o]n March 9, 2011, Plaintiff was named in a news article on page one in a newspaper published by the San Francisco Chronicle regarding Deputy Tanabe and the 'dirty DUI's'." Dkt. No. 37 ¶ 28. Howard further alleges that, "[i]n the media reports, Plaintiff was identified as the second Deputy Sheriff involved in the Katz arrest and the person who reported Deputy Tanabe to Defendant CCC regarding the Katz arrest." *Id.* "Numerous other news articles and television news broadcasts regarding the dirty DUI's and identifying Plaintiff by name followed over the next several weeks." *Id.* Howard further alleges that, "[o]n March 9, 2011, Defendant Danville sent a letter to its residents regarding the dirty DUI's[,]" stating, in part:

> Today, the San Francisco Chronicle reported that a second deputy assigned to Danville was also involved in one of the DUI traffic stops. This report was based upon information that was contained in a search warrant affidavit that was filed in

> connection with the ongoing BNE/DA investigation. . . . It is essential that, as public employees, we conduct ourselves at all times in a way that adheres to the law and upholds the highest ethical and professional standards. . . . Though significantly different in terms of their alleged involvement in any impropriety, both of the officers I've cited were immediately reassigned out of Danville, and both will be subject to further investigation. . . . the Office of the Sheriff has initiated their own separate Internal Affairs investigations in connection with each officer. These investigations will need to run their course in order to determine what actions might be taken, including criminal prosecution and/or disciplinary action.

*Id.* ¶ 29. Howard asserts that, although the letter did not refer to him by name, "the letter did refer the residents of Danville to a news report that identified Plaintiff as the second Sheriff's deputy involved in the dirty DUI arrest of Katz." *Id.* Howard claims that "[t]he letter, coupled with the media reports, impugned Plaintiff's good name, reputation, honor and integrity as law enforcement officer." *Id.* The County terminated Howard's employment in August 2012. Dkt. No. 37 ¶ 48.

Defendants now move to dismiss Howard's due process claim, arguing that Howard has not alleged that defendants made or publicized a defamatory statement about him, or that defendants encouraged, aided, or solicited any media reports that alluded to him. Dkt. No. 48 at 8. In response, Howard argues that when the letter disseminated by defendants acknowledged the statements in the media about Howard's involvement in the "dirty DUI's," coupled with a statement that he was reassigned and under investigation, defendants adopted the stigmatizing statements. Dkt. No. 55 at 18.

Defendants argue that "[a] fair reading of the Chronicle article reveals that plaintiff was not accused of wrongdoing" and that "the Chronicle article – and the Newsletter which referenced it – was evidence of plaintiff's good 'honor and integrity as a law enforcement officer.'" Dkt. Nos. 48 at 10; 57 at 3.[1] Defendants further contend that the Chronicle article linked Howard to the Katz arrest as a passive participant only, and thus neither of the two

[1] Over Howard's objection, defendants ask the Court to take judicial notice of the article and letter alleged in the complaint. Dkt. No. 47. While contending that these documents are hearsay and irrelevant for the purposes of this motion, Howard has not challenged their authenticity. Dkt. No. 56. The Court takes judicial notice under Federal Rule of Evidence 201(b) of the fact of the publications but not of the truth of any matters asserted in them. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of publications "solely as an indication of what information was in the public realm at the time").

articles was false. Dkt. No. 48 at 11. However, the letter states that the "second deputy" involved in the DUI traffic stops as reported by the Chronicle was reassigned and was under investigation for "alleged involvement in any impropriety." Dkt. No. 37 ¶ 29. While the letter itself does not affirmatively state that Howard was involved in, or charged with, any impropriety, at this pleading stage the Court is required to construe the allegations in favor of plaintiff. The letter, in conjunction with the media reports, could be read as implicating Howard in the improprieties that were reported in the media. The Court cannot agree with defendants that the only reasonable implication from the alleged facts is that of Howard's "good 'honor and integrity as a law enforcement officer.'" Whether the statements made in the letter rose to the level of stigmatizing Howard is a question of fact.

Likewise, the Court is not convinced by defendants' argument made in their reply brief that the County did not publish the letter because "[t]he Contra Costa County Sheriff's Office . . . and Danville – as well as its town manager – are separate entities." Dkt. No. 57 at 4. The first amended complaint alleges that the County provides police services to Danville. Dkt. No. 37 ¶ 4. Thus, the factual dispute as to whether the County had any involvement in disseminating the letter is not well suited for resolution on a motion to dismiss.

The inference that defendants publicized a stigmatizing charge, however, is not sufficient by itself to state a due process claim. The Court agrees with defendants that Howard has failed to allege that the stigmatizing charge was made in connection with his employment termination. The media reports and letter alleged in the first amended complaint do not refer to Howard's termination. As the Court pointed out in its February 28 order, Howard does not allege that the fact of his termination (or the reasons for his termination) was publicized in any way by defendants. Dkt. No. 35 at 20. This deficiency has not been remedied despite the opportunity to amend the complaint.

In support of their motion to dismiss, defendants rely on *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) to argue that unpublicized reasons for termination do not give rise to a due process claim. Dkt. No. 48 at 12. In *Bollow*, the

Ninth Circuit held that plaintiff's due process claim failed because "[w]hen reasons [for the termination] are not given, inferences drawn from dismissal alone are simply insufficient to implicate liberty interests." *Bollow*, 650 F.2d at 1101. Howard responds that *Bollow* is distinguishable because, unlike this case, no stigmatizing statements were ever disseminated about the plaintiff to the public. Dkt. No. 55 at 17. Despite the fact that defendants did not publicize Howard's termination or the reasons for it, Howard asserts that he has adequately alleged that a name-clearing hearing was required because defendants terminated him "under a cloud of malfeasance" and "[w]hile the media storm over the dirty DUI's was still raging." Dkt. No. 55 at 17-19.

In support of his argument, Howard urges the Court to follow the reasoning of the out-of-circuit opinions cited in the Court's February 28 order, Dkt. No. 35; *see Quinn v. Syracuse Model Neighborhood, Corp.*, 613 F.2d 438, 445-47 (2d Cir. 1980); *McGhee v. Draper*, 564 F.2d 902, 906-10 (10th Cir. 1977); *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 83 (3d Cir. 1989). These out-of-circuit authorities, however, are distinguishable. The complaint in this case fails to allege conduct by the defendants that adopted stigmatizing statements about plaintiff *in connection with his termination*. With respect to temporal proximity, the requirement that the statements be made "in the course of the termination" may be met "when defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996); *see also Tibbetts v. Kulongoski*, 567 F.3d 529, 538 (9th Cir. 2009) (holding that sixteen months is far too remote from the terminations to meet *Campanelli*'s "temporal nexus" test).

Here, the only alleged disclosure of stigmatizing statements by defendants occurred approximately 15 months before the termination. Furthermore, not only were the alleged stigmatizing statements remote in time, but they also did not refer to the termination of Howard's employment, and neither the fact of the termination nor the reasons for it were publicized by defendants. Accordingly, the Court finds that the first amended complaint fails to allege sufficiently that a stigmatizing charge was made in connection with his

employment termination in order to trigger the requirement to provide a name-clearing hearing. While in his opposition to the motion to dismiss Howard makes the general assertion that the "Complaint can be amended to add additional facts supporting Plaintiff's allegations and causes of actions," he has failed to offer any such facts despite being given the opportunity to amend. Because Howard has failed to remedy the deficiencies identified in the Court's prior dismissal order, Howard's claim for relief under 42 U.S.C. § 1983 for violation of due process is dismissed without further leave to amend.

**B. The First Amended Complaint States a § 1983 Claim Against Defendants Fawell and Livingston In Their Individual Capacities (Third Claim for Relief).**

Defendants also move to dismiss Howard's third claim for relief under 42 U.S.C. § 1983 against County sheriff Livingston and assistant sheriff Fawell. Dkt. No. 48 at 16. In its February 28 order, the Court dismissed the § 1983 claim against Fawell in his official capacity as duplicative with the claim against the County. Dkt. No. 25 at 22. For the same reason, the Court now dismisses without prejudice the claim against Livingston. As a result, Livingston and Fawell may only be held liable for § 1983 violations in their individual capacities.

As an initial matter, defendants contend that the § 1983 claim against Livingston and Fawell is identical to the one contained in the original complaint and that this time it should be dismissed with prejudice. Dkt. No. 48 at 16. However, in their motion to dismiss the original complaint, defendants did not argue that this claim failed to allege a sufficient basis for individual liability under § 1983. Instead, defendants argued, and the Court agreed that the § 1983 claim must be dismissed with leave to amend as to all defendants to the extent it was premised on a due process violation, and as to defendant Fawell because as alleged it was time-barred. *See* Dkt. No. 35 at 40. Further, in their current motion defendants move to dismiss the third claim for relief against Livingston and Fawell by relying on cases dealing with municipal liability even though the claim is against those defendants individually and not against the municipality. Dkt. No. 48 at 16-17. At the same time, defendants have not moved to dismiss Howard's claim for municipal liability against the

County, which is the second claim for relief in the first amended complaint. Dkt. No. 37 ¶¶ 54-61; *see* Dkt. Nos. 48 at 6-7; 49. Howard's opposition in turn adds to the confusion by referring repeatedly to the § 1983 claim for relief against Fawell and Simpkins, rather than Fawell and Livingston, Dkt. No. 55 at 20, which the Court interprets as an error. *See* Dkt. No. 37 ¶¶ 62-69. The only claim in the first amended complaint against Simpkins is the fifth claim for relief for negligent hiring, *see* Dkt. No. 37 ¶¶ 80-101, which the Court addresses later in this order.

Moving to the merits of the motion to dismiss, the Court finds that the third claim for relief adequately alleges individual liability under § 1983 against Livingston and Fawell. A supervisor may be held liable in his individual capacity under § 1983 if he "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)). Supervisors "can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)); *see also Larez v. City of L.A.*, 946 F.2d 630, 645-46 (9th Cir. 1991) (a supervisor's individual liability "hinges upon his participation in the deprivation of constitutional rights," which "may involve the setting in motion of acts which cause others to inflict constitutional injury.").

The first amended complaint alleges that sheriff Livingston and assistant sheriff Fawell "failed to instruct, supervise, control and/or discipline, on a continuing basis, employees and agents of the Contra Costa Sheriff's Department in the performance of their duties to refrain from retaliating against Plaintiff for having exercised his constitutionally protected rights." Dkt. No. 37 ¶ 65. Howard further alleges that in October 2011, he learned that Fawell, "in his on going effort to retaliate against Plaintiff, continued to closely monitor Plaintiff's activities." *Id.* ¶ 42. Howard was told by co-workers that "Fawell had it

out for Plaintiff and that Defendant Fawell was encouraging Plaintiff's co-workers to retaliate against Plaintiff." *Id.* For example, "Fawell was incensed that Plaintiff returned his Marine Patrol equipment and ordered Lt. Lowden to investigate Plaintiff." *Id.* Lt. Lowden then "met with Plaintiff and conveyed Defendant Fawell's anger" and told Plaintiff "to keep a 'low profile' and hope that the dirty DUI scandal died down." *Id.* Additionally, Howard alleges that on April 12, 2012, at his request, Howard met with Livingston and complained to him about the harassment and retaliation he was experiencing because of his report about Deputy Tanabe. *Id.* ¶ 44. Howard alleges that Livingston ignored his complaints and told him that he should consider himself "lucky" that he had not been dismissed and suggested writing a letter of apology for being involved in the dirty DUI's. *Id.* Livingston ended the meeting by telling Howard that he was "too sensitive" and "needed to grow thicker skin." *Id.* Howard claims that Livingston and Fawell, in their supervisory capacities, knew of the wrongdoing of their subordinates. Dkt. No. 55 at 20.

The Court finds that the first amended complaint alleges sufficient facts plausibly linking Livingston and Fawell to the alleged unconstitutional conduct. Accordingly, defendants' motion to dismiss the § 1983 claim against Livingston and Fawell in their individual capacities is denied.

**C. The First Amended Complaint Fails to State a Claim For the Negligent Hiring, Retention, Supervision, and Training of Deputy Tanabe (Fifth Claim for Relief).**

Howard's fifth claim for relief alleges that defendants are liable for the negligent hiring, retention, supervision, and training of "their agents and/or servants and/or employees, including Deputy Tanabe." Dkt. No. 37 ¶¶ 80-101. Specifically, Howard alleges that defendants knew or should have known that Deputy Tanabe would abuse his position and authority. *Id.* ¶ 83. Howard further alleges that as a result of defendants failing to insure that Deputy Tanabe was fit for duty, Howard was placed in a position of "witnessing the crime of a police deputy and harassment and retaliation for witnessing and reporting said crime to law enforcement." *Id.* ¶ 87. Howard also alleges that the County and Livingston are further liable for failing to prevent Fawell from harassing and retaliating

against Howard for reporting the crime of a deputy officer.[2] *Id.* ¶ 95. Howard alleges that he was subjected to the criminal conduct of Deputy Tanabe, and to retaliation and harassment that violated California Labor Code section 1102.5 and his constitutional rights. *Id.* ¶¶ 98-99. Howard claims that defendants' conduct violated public policy and fell outside the compensation bargain. *Id.*

Defendants argue that this claim must be dismissed because workers' compensation is the exclusive remedy for injuries arising out of and in the course of the employment relationship. In its February 28 order, the Court dismissed the negligent hiring claim in the original complaint, finding that Howard had not provided any authority supporting the proposition that the defendants' alleged negligent acts of hiring, which placed Howard in a position to witness a crime and be harassed and retaliated against for reporting the crime, exceed the risk inherent in the employment relationship. Dkt. No. 35 at 35-36.

Despite the opportunity to amend, the complaint continues to suffer from this defect. The Court agrees with defendants that, although Howard has augmented his allegations with a conclusory statement that the alleged conduct "violated public policy and fell outside the compensation bargain," Dkt. No. 37 ¶¶ 98-99, his claim for the negligent hiring of Deputy Tanabe remains barred by workers compensation exclusivity. While there are exceptions to the preemption rule for "conduct that 'contravenes fundamental public policy'. . . [and] conduct that 'exceeds the risks inherent in the employment relationship,'" as the Court explained previously, those do not apply to the alleged conduct here. *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008) (citing *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992)). In *Miklosy*, the California Supreme Court clarified that the exception for conduct that "contravenes fundamental public policy" is aimed at permitting a *Tameny* action for wrongful termination in violation of public policy. *Id.* at 902-03. The Court also rejected the argument that whistleblower retaliation is not a risk inherent in the

[2] While the parties' briefs do not refer specifically to Fawell in connection with the motion to dismiss the fifth claim for relief, the grounds for dismissing the claim as to Deputy Tanabe apply equally as to Fawell.

employment relationship. *Id.* at 903.

Howard now asserts that *Miklosy* is distinguishable because the defendant in that case resolved the retaliation complaint through internal procedures. Dkt. No. 55 at 22. However, there is no indication in the *Miklosy* opinion that its holding should be limited in this way. The Court finds that the reasoning in *Miklosy* applies here and that Howard has failed to sufficiently allege conduct exceeding the risks inherent in the employment relationship. Howard's fifth claim for relief for the negligent hiring, retention, supervision, and training is thus preempted by the workers' compensation exclusivity principle and is dismissed without further leave to amend.

**D. The First Amended Complaint Fails to State a Claim For Negligent Hiring, Retention, Supervision, and Training as to Simpkins and Danville (Fifth Claim for Relief).**

In its February 28 order, the Court dismissed with leave to amend the § 1983 claim against Danville sheriff Simpkins in his individual capacity, finding that Howard failed to allege any facts to infer liability against Simpkins on any theory. Dkt. No. 35 at 27-28. The Court also dismissed the § 1983 claim against Simpkins in his official capacity as duplicative of the claim against the Town of Danville. *Id.* The only claim against Simpkins and Danville in the first amended complaint is the fifth claim for relief, alleging negligent hiring, retention, supervision, and training of Deputy Tanabe and other unnamed agents or employees who retaliated against Howard. *See* Dkt. No. 37 ¶¶ 80-101.

Defendants argue that this claim should be dismissed for the additional reason that the first amended complaint does not set forth any allegations indicating that defendants Simpkins and Danville had any role in hiring, supervising, or training the unnamed employees/agents. Dkt. No. 48 at 18. The Court need not resolve this argument because, for the reasons discussed above, the negligent hiring claim is dismissed as preempted by the workers' compensation exclusivity principle as to all defendants.

//

## IV. CONCLUSION

The Court grants in part and denies in part defendants' motion to dismiss the first amended complaint as follows:

1. Howard's first claim for relief under 42 U.S.C. § 1983 for violation of due process as to all defendants is dismissed with prejudice.
2. Howard's third claim for relief under 42 U.S.C. § 1983 against defendant Livingston in his official capacity is dismissed without prejudice.
3. The motion to dismiss Howard's third claim for relief under 42 U.S.C. § 1983 against defendants Livingston and Fawell in their individual capacities is denied.
4. Howard's fifth claim for relief for the negligent hiring, retention, supervision and training is dismissed with prejudice as to all defendants.
5. This action is dismissed with prejudice as to defendants Simpkins and Danville.

IT IS SO ORDERED.

Date: August 26, 2014

Nathanael M. Cousins
United States Magistrate Judge